# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| A & G COAL CORPORATION, ET AL., | ) ) ) |
| Plaintiffs, | ) Case No. 2:08CV00052 ) ) **OPINION** |
| v. | ) ) ) By: James P. Jones |
| INTEGRITY COAL SALES, INC., | ) Chief United States District Judge ) ) |
| Defendant. | ) |

*Francis H. Casola, Woods Rogers, P.L.C., Roanoke, Virginia, and Elsey A. Harris, III, Mullins, Harris & Jessee, Norton, Virginia, for Plaintiffs; Mark E. Feldmann and Patrick R. Kelly, Glenn, Feldmann, Darby & Goodlatte, Roanoke, Virginia, for Defendant.*

In this contract dispute, the present issue is whether the matter is subject to binding arbitration pursuant to an arbitration clause contained in a written purchase order signed by the parties. While the plaintiffs contend that the arbitration clause is not effective because the contract as a whole was subject to a condition precedent to formation that was never met, I find that arbitration is required because arbitration clauses in other purchase orders cover the present dispute.

I

In this action brought under the diversity jurisdiction of the court, the plaintiffs, A & G Coal Corporation ("A & G") and Meg-Lynn Land Company, Inc. ("Meg-Lynn"), seek a declaratory judgment that they are not obligated to provide coal to the defendant, Integrity Coal Sales, Inc. ("ICS"), pursuant to a certain written coal purchase order. In response, ICS asserts that this claim is subject to binding arbitration as agreed by the parties and the present lawsuit should be accordingly dismissed. In reply, A & G and Meg-Lynn argue that because the purchase order at issue was subject to a condition precedent to formation that was never met, the entire contract, including the arbitration clause, was never effective. The defendant's Motion to Dismiss or Stay and Alternative Motion to Compel Arbitration have been briefed and argued and are ripe for decision.

II

For the purposes of the present motion, the facts are not in dispute. ICS purchased coal from A & G and Meg-Lynn on several occasions from November 2006 to early 2008. Purchases were made pursuant to purchase orders dated November 2, 2006; December 28, 2006, revised January 19, 2007 (the "2007

Purchase Order"); and January 24, 2008. Each of these purchase orders was signed by representatives of ICS and either Meg-Lynn or A & G.

This dispute arises out of an additional purchase order dated September 24, 2007, which specified quantity and price terms for coal to be purchased from January to December of 2008 (the "2008 Purchase Order"). Representatives of ICS and both A & G and Meg-Lynn signed the face of the 2008 Purchase Order beneath the following language:

> Integrity Coal Sales, Inc. (the "Buyer") and the Seller identified below agree to sell the above described quantity and quality of coal on the above terms and the GENERAL TERMS AND CONDITIONS contained on the reverse side or following page of this Purchase Order which are INCORPORATED BY REFERENCE as if fully set forth herein.

(Compl. Ex. B at 1.)

Every purchase order signed by the parties contained identical General Terms and Conditions on the second page. The purchase orders differed only with respect to the specific characteristics of the coal to be purchased, price, quantity, dates, and any other terms added to the first page. One of the General Terms and Conditions that was included in the 2008 Purchase Order, as well as in all of the other purchase orders signed by ICS, Meg-Lynn, and A & G, was the following arbitration agreement:

> Any dispute or controversy arising from or relating to the parties to this Agreement shall be settled by binding arbitration conducted by the American Arbitration Association in accordance with its Commercial Arbitration Rules. Any arbitration hearing shall be conducted at a place of mutual agreement of the parties or otherwise shall be held in New York, N.Y. before a single arbitrator chosen by mutual agreement. If the parties are unable to mutually agree on a single arbitrator, then each party shall appoint one arbitrator who will, in turn, agree upon the appointment of a third arbitrator. If one party refuses to name an arbitrator or if the two appointed arbitrators are unable [to] agree upon the third arbitrator, then the American Arbitration Association shall make the appointment(s) from among its list of qualified commercial arbitrators. The decision of the sole arbitrator or a majority of the three arbitrators, as appropriate, shall be final and binding on both parties.

(*Id.* at 2.)

The plaintiffs allege that they were never bound to supply ICS with coal under the 2008 Purchase Order because two conditions precedent listed in the agreement had not been met. The alleged conditions precedent were that (1) a prior purchase order, the 2007 Purchase Order, be completed, and (2) A & G and Meg-Lynn commence delivery of coal.

The first alleged condition precedent derives from terms on the face of the 2008 Purchase Order, stating, "This P.O. commences immediately or upon the completion of the prior P.O. which is Purchase Order 10774 dated December 28, 2006." (*Id.* at 1.) The plaintiffs allege that Purchase Order 10774, the 2007 Purchase Order, was never "completed" because the defendant breached its obligations pursuant to the

- 4 -

Case 2:08-cv-00052-JPJ-PMS   Document 19   Filed 03/06/09   Page 4 of 17   Pageid#: 91

2007 Purchase Order and therefore that agreement terminated by its own terms. Since the 2007 Purchase Order was never "completed," the plaintiffs contend that a condition precedent to performance of the 2008 Purchase Order was not met, and that they were therefore never obligated to sell coal to ICS under the 2008 Purchase Order.

The second alleged condition precedent derives from one of the General Terms and Conditions on page two of the purchase order: "II. Commencement of deliveries by Seller to Buyer constitute acceptance of all the terms of this Agreement." (*Id.* at 2.) The plaintiffs argue that according to this clause, the 2008 Purchase Order would not "take effect" unless and until they commenced delivery of coal. (Compl. ¶ 12.) Since neither A & G nor Meg-Lynn commenced delivery of coal under the terms of the 2008 Purchase Order, they assert that they were never bound to sell coal to ICS under the 2008 Purchase Order.

In a letter dated February 20, 2008, A & G advised ICS that A & G would no longer do business with ICS due to alleged breaches of the 2007 Purchase Order. Specifically, A & G claimed that ICS failed to pay promptly after receiving confirmation of shipments of coal and failed to purchase the full amount of coal specified in the 2007 Purchase Order.

- 5 -

Following A & G's letter, ICS issued repeated demands to the plaintiffs for coal under the 2007 and 2008 Purchase Orders. In a facsimile dated September 15, 2008, ICS estimated its "losses for non-delivery of coal to be $8,524,800.00." (Compl. Ex. F.) ICS insisted, "If immediate arrangements are not made to remit $824,524,800.00 to [ICS], we will have no alternative but to commence arbitration pursuant to the terms of the Purchase Orders." (*Id.*)

A & G and Meg-Lynn seek a declaratory judgment from this court that they have no obligation or duty to ICS under the 2008 Purchase Order. ICS alleges that it is ready and willing to submit this claim to binding arbitration.

III

ICS moves to dismiss the Complaint or to stay the trial of this case pending arbitration. In the alternative, the defendant moves to compel arbitration of the disputes alleged in the Complaint. As noted above, all of the purchase orders signed by the parties contain a broad arbitration clause, which states, "Any dispute or controversy arising from or relating to the parties to this Agreement shall be settled by binding arbitration . . . ." (Compl. Ex. B at 2.)

- 6 -

Since the purchase orders at issue involve interstate commerce,[1] the Federal Arbitration Act ("FAA"), 9 U.S.C.A. § 1-16 (West 1999 & Supp. 2008), applies. *See* 9 U.S.C.A. §§ 1, 2. Under the FAA, a district court must stay the trial of an action where the parties have an agreement in writing to arbitrate the dispute if the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C.A. § 3; *see also* § 4 (specifying that a court shall make an order directing the parties to arbitrate only "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"). The court decides two gateway issues of arbitrability: (1) whether the parties have a written agreement to arbitrate, and (2) whether the scope of that agreement includes the dispute at issue. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.") (internal quotation marks omitted); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). In determining whether the

---

[1] The defendant is a New York corporation and the plaintiffs are Virginia corporations.

parties executed a valid agreement to arbitrate, courts generally apply ordinary state law principles of contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The arbitrator decides arbitrability issues if the parties clearly and unmistakably agreed to arbitrate arbitrability issues. *AT&T*, 475 U.S. at 649; *First Options*, 514 U.S. at 944; *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) ("[I]n the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.*, whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide") (internal quotation marks omitted). Here, the arbitration clauses are broad, but they do not explicitly include the arbitration of arbitrability issues, so substantive arbitrability issues must be decided by the court.

IV

In response to the defendant's motions, the plaintiffs' argument focuses almost exclusively on whether they should be bound to the arbitration clause contained in the 2008 Purchase Order. The plaintiffs claim that the arbitration clause in the 2008 Purchase Order is not binding because they never accepted the 2008 Purchase Order

- 8 -

and they therefore never agreed to the terms in the agreement, including the arbitration clause. Their argument relies on one of the conditions precedent alleged in the Complaint.[2] The plaintiffs contend that although Darrell Grigsby, General Manager of A & G, signed the 2008 Purchase Order on behalf of both A & G and Meg-Lynn,[3] *see* App. A, at 1, commencement of delivery of coal was a condition precedent to acceptance of the entire agreement. The plaintiffs claim that because they never commenced delivery under the terms of the 2008 Purchase Order, they never accepted the purchase order and they are not bound to any of its terms. The defendant counters that under the separability doctrine of *Prima Paint*, the arbitration clause in the 2008 Purchase Order is valid separate and apart from the contract as a whole.

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967), the Supreme Court announced that arbitration agreements are severable, or "separable," from the contract as a whole, and an arbitration agreement may be

---

[2] The plaintiffs characterize completion of the 2007 Purchase Order as a condition precedent to performance, which would have no affect on whether or not they assented to other terms in the 2008 Purchase Order. However, the plaintiffs claim that commencement of delivery of coal was a condition precedent to acceptance of the entire agreement, and without commencing delivery, there was no contract at all.

[3] Although Grigsby is an employee of A & G, the plaintiffs do not contest that he signed the 2008 Purchase Order as a representative of both A & G and Meg-Lynn. A & G and Meg-Lynn are affiliated companies.

- 9 -

binding even if the contract as a whole is later found to be void. *See also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."). The Supreme Court has maintained this position in a variety of contexts, including where parties claimed that the contract as a whole was induced by fraud, *Prima Paint*, 388 U.S. 395, and that the contract as a whole was illegal, *Buckeye*, 546 U.S. 440. The lesson from *Prima Paint* and its progeny is that even if a contract as a whole is void or voidable, it is possible that the parties formed a valid agreement to arbitrate, and if so, that agreement to arbitrate should be enforced.

But *Prima Paint* maintained that courts decide whether the parties formed an agreement to arbitrate. *Prima Paint*, 388 U.S. at 404 ("We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate."). In *Buckeye*, the Court concluded that the doctrine of separability applies whether a party claims that the contract as a whole is void or voidable. *Buckeye*, 546 U.S. at 446. However, Justice Scalia noted explicitly that the Court's opinion did not address whether an agreement to arbitrate was enforceable if it was alleged that no agreement was ever concluded because one party never signed the contract, the signor lacked authority to commit the alleged principal, or the signor

lacked the mental capacity to assent. *Id.* at 444 n.1; *see also Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 637 (4th Cir. 2002) (noting that "the severability doctrine has been held not to apply when the party seeking to avoid arbitration contends that it never assented in the first place to the contract containing the arbitration provision").

The issue here is whether the doctrine of separability should apply where one party claims that a contract signed by the parties was never formed because a condition precedent to acceptance was not satisfied. On the one hand, this case is distinguishable from the cases where a signatory did not have the authority or capacity to form a binding agreement. The plaintiffs in this case admit that their representative signed the 2008 Purchase Order.

According to the plaintiffs' theory, A & G and Meg-Lynn signed the 2008 Purchase Order, but there was no binding contract unless and until they commenced delivery of coal. If this argument were correct, when the plaintiffs signed the 2008 Purchase Order they did not signify acceptance of the contract as a whole, nor the arbitration clause included within it. This case is distinguishable from *Prima Paint* and others where the parties formed a contract and agreed to an arbitration clause within it, but later claimed that the contract as a whole should be declared void or voidable. Instead, the plaintiffs claim there was never any contract nor any agreement

- 11 -

to arbitrate at all. Even if the arbitration clause were separable from the contract as a whole, if by signing the contract the plaintiffs did not assent to any terms, they did not assent to arbitration. A party cannot be compelled to arbitrate where it never agreed to do so. *Volt Info. Scis., Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989); *Howsam*, 537 U.S. at 83.

If the 2008 Purchase Order had been the only agreement between these parties, I could not conclude that the plaintiffs agreed to arbitrate without first deciding whether there was a condition precedent to the formation of a binding agreement. *See, e.g., Serra v. Saturn of Clearwater, Inc.*, No. 8:08-cv-856-T-33MAP, 2008 WL 5412213, at *4 (M.D. Fla. Dec. 29, 2008) (concluding that the parties had a valid arbitration agreement, in part because there was not a condition precedent to formation of the overall contract); *Rapid Settlements, Ltd. v. BHG Structured Settlements, Inc.*, 202 S.W.3d 456, 462 (Tex. App. 2006) (finding that there was no arbitration agreement where a condition precedent to the formation of the entire contract had not yet been satisfied); *see also Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 219 (5th Cir. 2003) ("We therefore conclude that where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute."). Unfortunately, this would also decide the merits of one of the plaintiffs' claims, which is not the preferred

- 12 -

outcome. *See AT&T*, 475 U.S. at 649 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."). Before proceeding down this path, I consider other means by which the parties may have agreed to arbitrate this dispute.

V

The defendant points out that the same broad arbitration clause appears in every purchase order signed by the parties. The plaintiffs admit that Meg-Lynn signed the purchase order dated November 2, 2006, and the 2007 Purchase Order,[4] and Meg-Lynn delivered coal pursuant to those agreements. The plaintiffs also admit that A & G signed the purchase order dated January 24, 2008, and delivered coal pursuant to that agreement. All of these purchase orders include the same arbitration clause: "Any dispute or controversy arising from or relating to the parties to this Agreement shall be settled by binding arbitration . . . ." (Compl. Ex. B at 2.) Even if

---

[4] The plaintiffs argue that the 2007 Purchase Order terminated on its own terms, and that the arbitration clause therefore also terminated. *See Va. Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 118-19 (4th Cir. 1993) (finding that a court should decide whether an arbitration agreement terminated when the overall contract terminated on a date certain). However, since Meg-Lynn agreed to arbitrate in the November 2, 2006 purchase order in addition to the 2007 Purchase Order, I need not address this argument. Although the November 2, 2006 purchase order was for a one-time purchase, there is no indication that the contract itself terminated on a date certain or that the arbitration agreement within it terminated.

the plaintiffs are correct that commencement of delivery of coal was a condition precedent to acceptance of these purchase orders, the plaintiffs signed these purchase orders and delivered coal pursuant to their terms, forming binding contracts and binding agreements to arbitrate.

The first issue of arbitrability, whether the parties have agreed to arbitrate, is therefore resolved: Meg-Lynn and A & G have both agreed to arbitrate disputes with ICS. The second question, then, is the scope of the agreements to arbitrate. Once the court finds that there is a valid agreement to arbitrate, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Here, the language of the arbitration clause is unambiguous: the parties agreed to arbitrate "[a]ny dispute or controversy arising from or relating to the *parties* . . . ." *See* App. A, at 2 (emphasis added). Any dispute between the parties goes to arbitration. The arbitration agreements are clearly broad enough to cover the current dispute between the parties regarding their respective obligations under the 2008 Purchase Order.

The fact that the arbitration agreements appear in contracts other than the 2008 Purchase Order at issue does not inhibit their application to this dispute between the parties. The Fourth Circuit has applied a similarly broad arbitration clause covering "[a]ny controversy or claim arising out of or relating to . . . *any aspects of the*

- 14 -

Case 2:08-cv-00052-JPJ-PMS   Document 19   Filed 03/06/09   Page 14 of 17   Pageid#: 101

*relationship between Hallmark and Retailer*" to apply to "all conflicts between the parties and not only to conflicts regarding [the contract within which the arbitration clause appeared] in particular." *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 568, 571 (4th Cir. 1998). The plaintiffs argue that the merger clause in each purchase order suggests that an arbitration clause in one contract should not be interpreted to include disputes regarding other agreements. But the plain language of the arbitration clauses and the parties' course of dealing suggest otherwise. The fact that every purchase order included an agreement to arbitrate any dispute between the parties reaffirms their intent to arbitrate all disputes "arising from or relating to the parties." Moreover, the purchase orders were not unrelated; they all involved the purchase of coal over successive periods of time.

The parties' intent is clear: they agreed, ex ante, that all of their disputes would be resolved pursuant to arbitration. Since arbitration agreements exist between ICS and both Meg-Lynn and A & G, and the issues in the current dispute are within the scope of those agreements, the entire matter should be resolved pursuant to arbitration.

# VI

The final issue that I must address is the proper remedy. The defendant moves for (1) dismissal, (2) a stay, or (3) in the alternative, an order compelling arbitration. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3.

Although the language of § 3 only provides for a stay, the Fourth Circuit has held, "Notwithstanding the terms of § 3, . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *see, e.g.*, *Payton v. Nordstrom, Inc.*, 462 F. Supp. 2d 706, 709 (M.D.N.C. 2006) (accepting the magistrate judge's recommendation that "[i]nstead of ordering a stay and compelling arbitration, . . . the court should grant Defendant's alternative motion to dismiss so that Plaintiff may submit his claims to mandatory, binding arbitration if he chooses to do so"); *M/A-COM, Inc. v. Seoul Commtech Co.*, No. 6:07cv00012, 2008 WL 345835, at *5

(W.D. Va. Feb. 6, 2008) (granting dismissal where defendant moved to dismiss or stay).

The issues presented in the Complaint are (1) whether commencement of delivery of coal was a condition precedent to the formation of a binding contract as to the 2008 Purchase Order, and (2) whether completion of the 2007 Purchase Order was a condition precedent to performance of the 2008 Purchase Order, and whether the 2007 Purchase Order was completed. As discussed above, ICS, Meg-Lynn, and A & G all agreed to arbitrate "[a]ny dispute or controversy arising from or relating to the parties . . . ." (Compl. Ex. B at 2.) All of the issues presented arise from or relate to these parties, and are therefore arbitrable. The proper remedy, then, is to dismiss the Complaint.

## VII

For the foregoing reasons, the defendant's Motion to Dismiss will be granted. A separate order will issue.

ENTER: March 6, 2009

/s/ JAMES P. JONES
Chief United States District Judge